## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| BRAYLON WILLIAMS | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| vs. | } | Docket No.: _____ |
| | } | |
| HYATT CORPORATION | } | |
| D/B/A HYATT CENTRIC MEMPHIS | } | JURY TRIAL DEMANDED |
| | } | |
| | } | |
| Defendant. | } | |

## COMPLAINT FOR DAMAGES UNDER THE TENNESSEE HUMAN RIGHTS ACT
## AND TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991

COMES NOW the Plaintiff, Braylon Williams in the above styled and numbered cause of action against the Defendant, Hyatt Corporation by and through his counsel of record. This case involves claims under Title VII, of the Civil Rights Act of 1964, and the Tennessee Human Rights Act and state law as amended for unlawful employment actions based on racial harassment, discrimination, and retaliation in addition to the state claims alleged.

## I.

## PARTIES

1. The Plaintiff, Braylon Williams, is a resident of Memphis, Shelby County, Tennessee for all time periods relevant to this complaint.

2. Defendant, Hyatt Corporation d/b/a Hyatt Centric Memphis ("hereinafter Hyatt") is a global hotel chain and foreign corporation licensed to do business in the state of Tennessee. Hyatt Corporation's principal place of business is at 150 N. Riverside Plaza, Chicago, Illinois but the Defendant can be served with process by serving the United

1

States Corporation Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

## II.

## <u>JURISDICTION and VENUE</u>

3. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964 as amended 1991 *et. seq.,* 42 U.S.C. § 2000e *et seq.,* the Civil Rights Act of 1866, as amended, and the Tennessee Human Rights Act, T.C.A. §4-21-301 *et. seq.*, Tennessee common law including punitive damages resulting from outrageous conduct, hostile work environment and intentional infliction of emotional distress.

4. Jurisdiction of this action is invoked pursuant to 28 U.S.C. § 1331 and § 1343.  Plaintiff invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to consider the state law claims because those claims arise out of the same facts and circumstances as the federal claims.

5. The unlawful employment practices and other actionable conduct were and continue to be committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Western Division.

## III.

## <u>STATEMENT OF FACTS</u>

6. Braylon Williams was hired in May of 2021 to work with the Hyatt Corporation on Beale Street in Memphis, Tennessee. The location was touted as  resort-style pool experience hotel in the downtown area with an expansive sun deck, private poolside cabanas, in keeping with the hotel's  overall music-inspired theme that delivered everything that a guest wanted.[1] Part of the draw of the Hyatt hotel was the Beale Street location, the pool

---

[1] Source, Hotel Online, February 9, 2021.

and the roof top bar and lounge area.

7. Williams was hired to be the face of the front desk in the position of Front Office Supervisor at $16.00 an hour with an increase in hourly wages at 3 months intervals which he never received.

8. At the time he started, Plaintiff was working with two other employees, Hanan Doudi, Front Desk Manager and Allie Purvis, PDX Operator, both white females.

9. As a Front Desk Supervisor Williams training was almost nonexistent and after one day on the job, he was put on the floor and left to his own devices to learn the policies and procedures of Hyatt. As a Front Desk Supervisor, Williams was told that hotel guest had pool privileges which consisted of them being able to use the pool facilities from roughly 7 am to 10 pm. Guests had to have their pool pass or wrist band displayed in order to be able to utilize the pool.

10. Doudi and Purvis had proper on the job training prior to the property opening, while there was not full assistance with Williams in learning his job, the hotel was often understaffed, and employees were discouraged by management from getting any overtime hours. Williams would often have to leave the front desk to assist other staff members including housekeeping duties.

11. Purvis was frequently disrespectful to Williams although he was technically her supervisor, she looked to Doudi to back her up in being insubordinate to his directives.

**Incident of July 29, 2021**

12. In July of 2021, there were many hotel guest in the pool area in the early evening hours while the Plaintiff was working as the Front Office Supervisor.

13. Purvis was working as the PDX operator on July 29, 2021, primarily responsible for

answering the telephones in the hotel during the shift and Williams was her immediate supervisor.

14. Doudi was the Assistant Front Office Manager during the Shift and would have been Plaintiff's Supervisor during the shift.

15. Guests, both white and black during the day were using the pool. Apparently, a male black guest rode a street scooter from outside the facility inside the hotel through the lobby to the pool area, waving at the lobby personnel. Hanan Doudi called security on the male black who went to the pool and security told all the black guests to leave the pool immediately.

16. A black guest confronted Hanan Doudi about calling security and she was not responding to the black guest. Plaintiff saw what was occurring and walked up when Allie Purvis came up from the back to confront another African American guest who had come from the pool area to the front desk. Purvis then started to record the encounter with her phone against hotel policy.

17. Plaintiff told Purvis to stop recording and returned to the back and her duties as PDX operator. She refused. Plaintiff was then talking to the African American family member who was speaking with Doudi, and he was successful in getting them to come outside the hotel and deescalate the tense situation inside with them. The family made a report about their treatment, being recorded by Purvis, and asked to leave the pool to the facility operations manager at the time.

18. After Plaintiff calmed the guests down, he returned to the back office, and he told Hanan Doudi and Allie Purvis that he felt that they "do not listen" and that Purvis should have never come to the front desk or recorded guests. Purvis said that he [Plaintiff] was not going to talk to them like that. Plaintiff looked at Doudi and she did not reprimand

4

Purvis. Williams left the office as he once again felt that it was futile to try to talk to them while they were togther. Purvis was insubordinate and Doudi did nothing to address the situation.

19. Braylon left the office and ultimately the hotel on this date as his shift was over and he was on vacation the next day. He felt he handled the situation the best he could and did nothing wrong.

20. Although Williams was on vacation the next week he was contacted by Hyatt management and told that he was being suspended without pay pending an investigation into the allegations of Doudi and Purvis that he intimidated, threatened, and barricaded them in the manager's office. No such thing had occurred, but the accusation was made against Williams, by Purvis.

21. The General Manager, Sara Titus asked him to record what had occurred at the pool and he did so and gave her his written statement of what occurred the day before.  The Plaintiff was told that based on what Purvis and Doudi said about him making them feel "uncomfortable" not about the how the African American guests were treated, an investigation was conducted into his conduct and Williams was suspended without pay.

22. Williams went on vacation and when he returned to Memphis and found that he was reinstated.  He was not told what if any action was taken against the white females, Doudi and Purvis but Purvis resigned.

23. When Williams returned from vacation, he continued to work in the roll of Front Desk Supervisor without any apology from any one at Hyatt related to the incident however his pay was reinstated.

24. Williams felt undermined and demeaned in his role as a Front Desk Supervisor for Hyatt and he felt as though his job was in jeopardy based on this incident.

## Application for Hotel Assistant Manager Position

25. Upon being hired with the Hyatt Corporation, Braylon Williams made it known that he was interested in moving up in Hyatt to a management position and wanted to apply for the hotel's open Assistant Manager's position.

26. The Assistant Manager position was more desirable because it paid a salary and the hours were based on a set schedule and the position was considered a stepping stone to work at larger properties the Plaintiff believed.

27. Williams spoke to Andrew Jonas about the position as Assistant Manager and Jonas told him that Jonas only considered the Plaintiff for the Night Auditor job although Plaintiff told Jonas he could work during daytime hours.

28. Williams frequently sat at the front desk at the Beale Street location to perform his job and used the computer to perform his job as a Front Desk Supervisor.

29. While performing his position he was sitting at the desk he saw emails mentioning employees that contained derogatory comments from upper managers, including Kim Voss and Andrew Jonas, Front Office Manager. Jonas was the decision maker for hiring the Assistant Manager position.

30. Voss and Andrew routinely talked about minority employees including Matthew (LNUK) (Hispanic) employee in a derogatory way as well as emails discussion firing the Plaintiff.

31. Jonas told Plaintiff in no uncertain terms that he should not apply for the position and that someone else has already been found. (Kim Voss).

32. Plaintiff was never interviewed for the position of Assistant Manager before Kim Voss was hired even though he has relevant on site experience.

## Stereotyping of African American Guest and Employees

33. Plaintiff believes that Jonas wanted to keep him on nights to deal with late night guests

on Beale Street who were African American who were referred to as "trash" by white management including Jonas.

34. During October 2021, one prominent Memphis athlete booked an event for a child's birthday party and a family reported an item stolen, Jonas and Voss joked about the family and called them "trash" in written emails.

35. Plaintiff had taken as much as he could from the cold shoulder of his coworkers, the denial of his promotional opportunities and the racially hostile treatment of staff and guests that culminated on or about October 22, 2021, when he arrived at work, and he was cursed at by Kim Voss in front of customers and employers of the Hyatt and told to "get the hell" off the desk.

### Plaintiff Resigns His Position and Files EEOC Charge of Discrimination

36. Plaintiff had enough of his discriminatory treatment and left the building, Plaintiff had done nothing on this date to warrant the cursing and did not know what Voss would do next, so he asked security to escort him to his car and he left the premises. He believes that interaction was witnessed by then Hyatt employee Sonya Bell, front desk clerk.

37. Plaintiff reported the conduct through the Hyatt complaint procedure through Human Resources and thereafter Plaintiff filed his timely complaint with the EEOC on or about October 25, 2021. (See Charge of Discrimination hereto attached as Exhibit A).

38. Plaintiff received his Right to Sue dated February 18, 2022, in the mail on or about February 22, 2022, and herein files his timely complaint. (See, Right to Sue Notice hereto attached as Exhibit B).

39. Defendant's unlawful employment practices complained of herein, were and are intentional, malicious and/or committed with a reckless disregard for Plaintiff's rights.

40. At all relevant times, Defendant, by and through its employees, acted with intent,

malice and/or reckless indifference to his state and federal protected rights of the Plaintiff who properly engaged in activities protected by law.

41. Plaintiff has been unable to find gainful employment since his termination from the Defendant.

## COUNT ONE:
## <u>RACE DISCRIMINATION</u>

42. Since January 2021 and continuing to the present the Defendant has engaged in unlawful employment practices in violation of the Tennessee Human Rights Act, Title VII of the Civil Rights Act of 1964 as amended 1991. The unlawful practices include but are not limited to discrimination against the Plaintiff on the basis of Race in the form of racial discrimination in pay and benefits, failing to promote the Plaintiff, failing to train the Plaintiff, and comments made by employees of the Plaintiff because of his Race (black);

43. Plaintiff was discouraged from applying for position(s) with the Company while other similarly situated non-protected employees were afforded more opportunities than Plaintiff.

44. Defendant's conduct constitutes willful and wanton action designed solely to harm Plaintiff thereby entitling Plaintiff to punitive damages.

## COUNT TWO:
## <u>HOSTILE WORK ENVIRONMENT</u>

45. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as though fully set forth here.

46. Since at least January 2021, Defendant has engaged in unlawful employment practices in violation of Tennessee Code Annotated §4-21-301 *et seq.,* Tennessee Common Law and Title VII of the Civil Rights Act of 1964 as amended 1991including but not limited to

making derogatory comments about African American guests and employees, subjecting African American employees to unequal terms and conditions of employment, improper meting out of discipline and subjecting Plaintiff to improper deductions from pay without cause.

47. As a proximate result of the conduct of the Defendants, Plaintiff has been damaged in an amount which has not yet been determined but which exceeds $75,000.00.

48. Defendants' conduct constitutes willful and wanton action designed solely to harm Plaintiff thereby entitling Plaintiff to punitive damages.

## COUNT THREE:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND OUTRAGEOUS CONDUCT

49. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as though fully set forth here.

50. The foregoing acts of Defendant include but are not limited to making racial comments to them in front of other employees, failing to respond in a timely and reasonable manner to complaints of Plaintiff about Jonas's behavior and profiling African Americans in general.

51. These actions of the Defendants have subjected the Plaintiff to unequal working conditions. The Defendants have failed to adequately investigate the complaints of Plaintiff in a timely manner. These acts were and are intentional and/or reckless are so outrageous so as not to be tolerated by civilized society and resulted in serious mental injury to Plaintiff.

52. As a direct and proximate result of Defendant's outrageous and intentional infliction of emotional distress, Plaintiff has suffered damages.

9

53. Defendant's conduct constitutes willful and wanton action designed solely to harm Plaintiff thereby entitling Plaintiff to punitive damages.

**COUNT FOUR:**

**<u>RETALIATION</u>**

54. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as though fully set forth here.

55. The Plaintiff engaged in protected activity by filing internal complaints against the Defendant.

56. The Defendant was/is aware of the original and renewed complaints of the Plaintiff regarding his treatment and the treatment of other black employees but only the Plaintiff has been the subject of discipline.

57. The Defendant has taken adverse action against the Plaintiff, by writing him up for minor infractions that were never the subject of discipline for the Plaintiff prior to the internal and external complaints of discrimination. Plaintiff contends these actions support his claims for retaliation and claims for continuation violation of the laws.

58. Defendant's actions are prohibited by Title VII of the Civil Rights Act of 1964 as amended 1991, Tennessee Human Rights Act, 4-21-101 *et seq.,* and Tennessee state laws.

**V.**

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff having suffered damages of loss of back pay and front pay, having suffered Plaintiff demands the following relief against Defendant:

A. That Plaintiff be provided a work environment free from racial harassment.

B. That judgment be entered in favor of the Plaintiff against HYATT CORPORATION for compensatory damages, for injuries he suffered under the

Tennessee Human Rights Act, Title VII of the Civil Rights Act of 1964 as amended 1991 in the amount of $300,000.00.

C.   That judgment be entered in favor of the Plaintiff against the Defendant for the humiliation and emotional distress in the amount to be determined at trial.

D.   That judgment be entered in favor of each Plaintiff against the Defendant for punitive damages in the amount to be determined at trial.

E.   That Plaintiff be awarded his reasonable attorney's fees together with cost and disbursements.

F.   Award the Plaintiff prejudgment and post judgment interest on all awards herein.

G.   That Plaintiff be awarded any such further equitable relief to which he may be entitled.

H.   JURY TRIAL DEMANDED


RESPECTFULLY SUBMITTED,

/s/ Florence M. Johnson
Florence M. Johnson (#015499)
Johnson and Johnson, P.C.
1407 Union Avenue, Suite 1002
Memphis, Tn 38104
(901) 725-7520 Telephone
fjohnson@johnsonandjohnsonattys.com
Attorney for Plaintiff, Braylon Williams